# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| MARY DAWES, INDIVIDUALLY AND | § | |
| AS THE ADMINISTRATOR OF THE | § | |
| ESTATE OF DECEDENT GENEVIE A. | § | |
| DAWES, ALFREDO SAUCEDO, AS NEXT | § | |
| FRIEND OF MINORS K.R. AND C.R., | § | |
| AND VIRGILIO ROSALES, | § | |
| PLAINTIFFS, | § | CASE NO. 3:17-CV-1424-X-BK |
| | § | |
| V. | § | |
| | § | |
| CITY OF DALLAS, CHRISTOPHER | § | |
| HESS, AND JASON KIMPEL, | § | |
| DEFENDANTS. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the District Judge's Order of Reference, Doc. 60, before the Court for

findings and a recommended disposition are *Defendant City of Dallas's Motion Pursuant to Rule*

*12(b)(6) to Dismiss the Plaintiffs' Federal Claims Alleged Against It in the Plaintiffs' Second*

*Amended Complaint*, Doc. 13, and *Defendant City of Dallas's Motion to Dismiss the Plaintiffs'*

*State Law Claims Against Individual Defendants, Christopher Hess and Jason Kimpel*, Doc. 14.

For the reasons stated herein, *Defendant City of Dallas's Motion Pursuant to Rule 12(b)(6) to*

*Dismiss the Plaintiffs' Federal Claims Alleged Against It in the Plaintiffs' Second Amended*

*Complaint*, Doc. 13, should be **DENIED**, and *Defendant City of Dallas's Motion to Dismiss the*

*Plaintiffs' State Law Claims Against Individual Defendants, Christopher Hess and Jason Kimpel*
should be **GRANTED** as to Defendant Jason Kimpel.[1]

## I.  BACKGROUND

Plaintiffs' claims against Defendant City of Dallas ("the City") arise out of the shooting
death of Genevive Dawes ("Dawes") and injuries sustained by Plaintiff Virgilio Rosales
("Rosales") during an encounter with Dallas Police Department ("DPD") officers Defendants
Christopher Hess ("Hess") and Jason Kimpel ("Kimpel").  Plaintiffs allege as follows in their
*Second Amended Complaint*:  During the early morning hours of January 18, 2017, Hess and
Kimpel responded to a suspicious person call regarding individuals in a black Dodge Journey at
an apartment complex.  Doc. 11 at 4.  Dawes purchased the vehicle a month earlier from an
individual who allegedly was unauthorized to sell it, but Dawes did not know the vehicle had
been reported stolen.  Doc. 11 at 5.

Dawes and Rosales were asleep in the vehicle when DPD officers, including Hess and
Kimpel, arrived on the scene.  Doc. 11 at 4.  The officers shined flashlights into the vehicle and
discovered Dawes asleep in the driver's seat and Rosales asleep in the front passenger seat.  Doc.
11 at 5.  Awakened by the lights and voices and unaware of who was approaching the vehicle,
Dawes started the car and attempted to back out.  Doc. 11 at 5.  After a police car drove into her
path, Dawes moved her vehicle slightly forward, shifted into reverse, and slowly backed up
again.  Doc. 11 at 5.  During the second reverse maneuver,

> Hess and Kimpel fired at least 13 shots through the passenger side window
> where Rosales was seated, striking Dawes four times in the neck, her right
> tricep, left arm, upper left chest and right forearm.  Dawes's right earlobe was

---

[1] This case is stayed as to Christopher Hess, pending the resolution of the pending state criminal
charges against him.  Doc. 63.  Thus, the Court does not determine any motion's merit as to
Hess.

also partially amputated.  Dawes was transported to Baylor Hospital where she later died as a result of her injuries.

Doc. 11 at 5.  Plaintiffs aver that despite camera footage of the incident, the DPD has not disciplined either Hess or Kimpel.  Doc. 11 at 7.

In this action brought under 42 U.S.C. § 1983 for an alleged violation of the Fourth Amendment to the United States Constitution, Plaintiffs claim that "the City and the DPD, by and through the Dallas City Council," have an inadequate training, supervision, and discipline policy with respect to (1) the use of proper detention and seizure procedures, (2) the use of excessive and/or deadly force, and (3) the proper use of "less deadly means" or de-escalation techniques.[2]  Doc. 11 at 12-14.  As to Hess and Kimpel, Plaintiffs also raise section 1983 claims for use of excessive force in violation of the Fourth Amendment.  Doc. 11 at 3-4, 11-12.  Finally, Plaintiffs bring a state law wrongful death and survival action against all Defendants.  Doc. 11 at 20-21.  The City now moves to dismiss the federal claims against it as well as the state law tort claims against Hess and Kimpel pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3]  Doc. 13; Doc. 14.

---

[2] Although Plaintiffs include in the factual background of the operative complaint various statements suggesting that the DPD has a policy, practice, and custom of using excessive force against minorities, they do not explicitly raise a Fourth Amendment claim against the City.  *See* Doc. 11 at 7-8.

[3] Although the City devotes several pages of its brief to addressing Plaintiffs' purported due process and equal protection claims, Doc. 13 at 10-15, the Court does not read the complaint to raise either cause of action, and Plaintiffs confirm in their response to the City's motion that they have not, Doc. 21 at 11.  The City also moves for dismissal of the Fourth Amendment claim against Kimpel, Doc. 35, which is addressed in a separate report and recommendation issued on this date.

## II.     APPLICABLE LAW

### A.  Rule 12(b)(6) Standard

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ratliff v. Aransas Cty., Tx.*, No. 19-40121, — F.3d —, 2020 WL 219011, at *2 (5th Cir. Jan. 15, 2020) (holding that the *Twombly* pleading standard applies to section 1983 municipal liability claims rather than the "lower-than-normal" pleading standard set forth in *Leatherman v. Tarrant Cty. Narc. Intel. & Coord. Unit*, 507 U.S. 163 (1993). In making this determination, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). However, the court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (internal citation and quotation marks omitted). In sum, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations and footnote omitted).

### B.  Section 1983

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under section 1983, a plaintiff must allege facts that show that he has been deprived of a right secured by the Constitution and the laws of the United States, and the defendants were acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

4

**C.  Municipal Liability & Failure to Train**

A city does not automatically incur section 1983 liability for injuries caused solely by its employees, and it cannot be held liable on a *respondeat superior* theory.  *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691, 694 (1978); *Johnson v. Deep East Tex. Reg'l Narc.*, 379 F.3d 293, 308 (5th Cir. 2004).  Rather, to establish municipal liability under section 1983 requires proof of three elements: (1) a policymaker; (2) an official policy or custom; and (3) that the policy or custom was the moving force behind the violation of a constitutional right.  *Monell*, 436 U.S. at 694.  The third *Monell* prong encompasses both a causal link ("moving force") and the city's requisite degree of culpability (deliberate indifference to federally protected rights).  *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998).

Failure to train is a separate theory of municipal liability.  *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010).  Nevertheless, the same deliberate indifference and causation standards apply to both types of claims.  *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (citing *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).  Thus, to adequately state a failure-to-train claim, a plaintiff must plead facts plausibly establishing that (1) the city's training procedures were inadequate; (2) the city was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the constitutional violations in question.  *Ratliff, — F.3d —*, 2020 WL 219011, at *3 (citing *Zarnow*, 614 F.3d at 170); *see also City of Canton*, 489 U.S. at 389 (stating that a municipality's failure to train must show "deliberate indifference to the rights of its inhabitants").

When an individual sues a municipality for a failure to train violation involving alleged police misconduct, he must provide fair notice to the city, which requires more than generically restating the elements of the claim.  Allegations that provide such notice can include, for

example, (1) past incidents of officer misconduct involving other individuals; (2) multiple harms by officers to the same plaintiff; (3) the involvement of multiple officials in the misconduct at issue; or (4) misconduct that occurred in the open. *Thomas v. City of Galveston*, 800 F.Supp.2d 826, 843-44 (S.D. Tex. 2011) (collecting cases). "Those types of details, or any other minimal elaboration a plaintiff can provide, help to 'satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests,' *Twombly*, 550 U.S. at 555 n.3, . . . and also to 'permit the court to infer more than the mere possibility of misconduct,' [*Ashcroft v.* ]*Iqbal*, [556 U.S. 662, 679 (2009)]." *Id.* at 844 (some internal punctuation altered or omitted).

## III.     ANALYSIS

### A.  Failure To Train

As an initial matter, although Plaintiffs raise claims for failure to train, supervise or discipline, the elements required to prove municipal liability are the same under all of these theories. *Jean v. City of Dallas*, No. 3:18-CV-2862-M, 2019 WL 7195308, at *5 n.6 (N.D. Tex. Aug. 12, 2019) (citation omitted), *adopted by* 2019 WL 7187104 (N.D. Tex. Dec. 23, 2019) (Lynn, J.), *appeal filed* No. 19-11387 (Dec. 27, 2019). Accordingly, the Court will address the claims collectively under the "failure to train" rubric.

#### 1.  Adequacy of Training

As noted above, Plaintiffs allege in the operative complaint that the City has an inadequate training, supervision, and discipline policy for DPD officers with respect to (1) proper detention and seizure procedures, (2) the use of excessive and/or deadly force, and (3) the proper use of "less deadly means" or de-escalation techniques. Doc. 11 at 12-14.

6

The City argues that Plaintiffs have failed to plead sufficient facts that would permit a reasonable inference that it has a policy or custom of deficiently training, supervising, or disciplining DPD officers.  Doc. 13 at 15.  For instance, the City asserts that while Plaintiffs plead that the DPD "has longstanding records of not providing DPD officers with adequate training on de-escalation techniques intended to prevent instances of excessive and deadly force and extrajudicial killings," they have not specified in what manner the training is inadequate. Doc. 13 at 16-17.

Upon consideration, however, the Court finds that Plaintiffs have sufficiently pled that the City has an inadequate use-of-force training policy.  In particular, they allege in the second amended complaint that: (1) due to the lack of training in the use of excessive force and the DPD's actual custom of "shoot first and ask questions later," DPD officers shot six unarmed, nonthreatening individuals between 2012 and 2017, Doc. 11 at 14; (2) three of the involved DPD officers were not disciplined for their actions, Doc. 11 at 14-15; (3) criticism of DPD's policies and procedures regarding the use of deadly force dates back to a 1987 report which pointed out that a new approach to force would be required for the City to overcome institutional training issues, Doc. 11 at 15-16; (4) in 2012, following the shooting death of an unarmed individual, then-DPD Chief David Brown stated that numerous policies would be implemented which would have addressed various deficiencies in DPD officer training and use of force techniques, Doc. 11 at 16-18; and (5) upon information and belief, the DPD has not implemented those policies "to aggressively curtail deadly shooting cases that have been a major problem since the early eighties, when the DPD was the subject of a Federal Investigation," and those problems persist to this day, Doc. 11 at 20.

7

Other courts have determined, under similar circumstances, that litigants' failure-to-train allegations were sufficient to withstand a motion to dismiss.  *Cf. Flanagan v. City of Dallas*, 48 F.Supp.3d 941, 957 (N.D. Tex. 2014) (finding that plaintiffs had adequately pled that the City's training procedures were inadequate when they alleged, *inter alia*, that DPD officers had shot at least 12 unarmed individuals during the year the decedent was shot, and a city councilman and Chief Brown had acknowledged the need for further officer training).  Indeed, one court recently observed:

> In the context of municipal liability . . . it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery. Accordingly, only minimal factual allegations should be required at the motion to dismiss stage.

*Thomas*, 800 F.Supp.2d at 843; *see also Ramirez v. Escajeda*, 298 F.Supp.3d 933, 945 (W.D. Tex. 2018) (holding that plaintiffs had adequately stated a claim by alleging that the city failed to train officers how to respond to crisis intervention calls, de-escalate potential confrontations with mentally ill persons in crisis, and minimize deadly or intermediate force when confronted with such persons), *appeal dismissed* 921 F.3d 497 (5th Cir. 2019); *Brown v. City of Houston*, 297 F.Supp.3d 748, 767 (S.D. Tex. 2017) (plaintiff alleged sufficient details about the "conviction culture" and "do whatever it takes" practice that encouraged prosecutors to pursue convictions at any cost to rise above the level of a "barebones recitation" and survive a motion to dismiss) (citing *Thomas*, 800 F.Supp.2d at 843); *cf. Delacruz v. City of Port Arthur*, No. 1:18-CV-11, 2019 WL 1211843, at *14 (E.D. Tex. Mar. 14, 2019) (holding that allegations officers did not receive state-mandated training were sufficient to state a failure-to-train claim).

Other judges of this Court have reached the opposite conclusion, but their facts are distinguishable from those presented here.  In *Edwards v. Oliver*, for example, police officers

arrived to shut down a house party attended by teenagers.  No. 3:17-CV-01208-M-BT, 2019 WL 4603794, at *1 (N.D. Tex. Aug. 12, 2019), *adopted by* 2019 WL 4597573 (N.D. Tex. Sept. 23, 2019) (Lynn, C.J.).  While several of the partygoers got into a car and slowly drove away, one of the officers fired five shots from his assault rifle at the car, killing one of the occupants.  *Id.* Other officers ordered the remaining teenagers out of the car and arrested them without telling them why.  *Id.*

In the lawsuit that followed, the plaintiffs claimed the city "failed to adequately train its officers on how to deal with individuals, specifically teenagers, during a raid of an event and the subsequent use of deadly force."  *Id.* at 2.  They also pled more generally that the city had a policy of deficient officer training in the proper use of deadly force, such that its actual custom or practice was to "shoot first and ask questions later."  *Id.*; *see also* No. 3:17-CV-0218-M-BT, Plaintiff Odell Edwards' *Fourth Amended Complaint*, Doc. 123 at 2 (alleging failure to "properly hire, train, supervise, screen, discipline, transfer, counsel or otherwise control officers who are known, or who should have been known, to engage in the use of excessive force and/or deadly force") & Doc. 123 at 22 (alleging failure "to adequately supervise and/or discipline its employees in handling usual and recurring situations with which they deal").  The remaining failure-to-train allegations the plaintiffs raised were all specific to the officer who fired his weapon on the night in question.  The court held that the plaintiffs had not pled with sufficient specificity how the city's use-of-force training program was defective.  2019 WL 4603794, at *9; *see also* 2019 WL 4597573 at *1 (granting leave to amend).  In the instant case, however, Plaintiffs have made additional — and far more specific — allegations.  *See supra* at 7.

Other judges of this and other Texas district courts have dismissed failure-to-train claims pursuant to Rule 12(b)(6) under circumstances that are arguably similar to those presented here,

but on closer review, those cases are likewise distinguishable.  For instance, in *Robinson v. Meeks*, the district judge dismissed a failure-to-train claim where the plaintiff alleged that the county had a policy of not adequately training staff and police officers regarding a number of duties that allegedly resulted in the violation of her constitutional rights.  No. 3:17-CV-606-K, 2018 WL 1399478, at *20 (N.D. Tex. Mar. 20, 2018) (Kinkeade, J.), *appeal dismissed*, No. 18-10473, 2018 WL 5098821 (5th Cir. July 26, 2018).  The court pointed out, however, that the plaintiff "merely ma[de] conclusory statements and recite[d] the elements for a failure to train claim," but did not claim that the officers were not trained or specify how the county's training program was inadequate or systematically deficient.  *Id.*  Again, Plaintiffs in this case have pled with far greater specificity as described above.  *See also Bryan v. City of Dallas*, 188 F.Supp.3d 611, 616, 621 (N.D. Tex. 2016) (dismissing failure-to-train claim because the plaintiffs alleged only that the city was liable for "fail[ing] to properly train or discipline [its employees] regarding responding to [911] calls and conducting an investigation of calls," but "neither identified a particular training program nor specified how such a program is deficient."); *Harvey v. Montgomery Cty.*, 881 F.Supp.2d 785, 798 (S.D. Tex. 2012) (dismissing where plaintiff "nowhere alleges facts that would show the [county's] training policy or procedure were inadequate, let alone facts that could state a claim that the need for more or different training is obvious."); *Miller v. City of Texas City*, No. 3:18-CV-00284, 2019 WL 2189262, at *4 (S.D. Tex. May 21, 2019) (dismissing where plaintiff merely alleged that the city "has a custom, policy, practice, and procedure of . . . not disciplining or training officers adequately," but did not explain how the training was deficient or point to any prior similar incidents), *adopted by* 2019 WL 3082951 (S.D. Tex. July 15, 2019); *Juarez v. Pizana*, No. 3:17-CV-00368-KC, 2018 WL 3769431, at *4 (W.D. Tex. June 25, 2018) (dismissing where plaintiff did not attribute

officer's alleged misconduct to inadequate training, allege any facts relating to the county's training procedures, or point to any similar alleged constitutional violations).

For the reasons stated above, and despite the City's arguments, the Court concludes that Plaintiffs have pleaded sufficient facts identifying the training they claim was inadequate, to wit: similar past incidents of DPD officer misconduct involving others as well as insufficient DPD officer training in the appropriate use of force. *Ramirez*, 298 F.Supp.3d at 945; *Flanagan*, 48 F.Supp.3d at 957; *Thomas*, 800 F.Supp.2d at 843.

   *2. Deliberate Indifference*

The City next contends that Plaintiffs have not alleged sufficient facts demonstrating that the City was deliberately indifferent to a specific inadequacy in the training of DPD officers. Doc. 13 at 17-18.  Plaintiffs respond that they have pointed to numerous, similar instances of excessive force by the DPD and thus have satisfied the deliberate indifference standard at this stage of the proceedings.[4] Doc. 21 at 17-18.

Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence — "it must amount to an intentional choice, not merely an unintentionally negligent oversight." *Shumpert v. City of Tupelo*, 905 F.3d 310, 316 (5th Cir. 2018) (citation and internal quotation marks omitted), *as revised* (5th Cir. Sept. 25, 2018), *cert. denied*, 139 S. Ct. 1211 (2019).  The most common way for a plaintiff to establish deliberate indifference in the failure-to-train context is to demonstrate that a municipality had "notice of a pattern of similar violations" which were "fairly similar to what ultimately transpired" when the plaintiff's own

---

[4] Although Plaintiffs also claim in their response to the City's motion that they alleged in their complaint (1) "dozens of instances occurring over more than a decade" in which the DPD used deadly force against unarmed individuals, Doc. 21 at 17, and (2) that the DPD was aware of numerous instances of excessive force due to its own internal affairs investigations, Doc. 21 at 18, a review of the operative complaint reveals no such allegations.

constitutional rights were violated.  *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (summary judgment context); *see also City of Canton*, 489 U.S. at 390 n.10 ("It could also be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need.  In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.").

Plaintiffs allege in the operative complaint a pattern of constitutional violations that is similar to what allegedly transpired in this case.  In particular, six prior DPD officer shootings of unarmed, nonthreatening individuals and the DPD's failure to discipline at least some of the officers involved.  *Compare* Doc. 11 at 5-7 *with* Doc. 11 at 14-15.  That is sufficient at this stage of the proceedings.  *See Sanders-Burns*, 594 F.3d at 381.

    *3.  Causation*

The City argues, in passing, that the operative complaint "fails to plead facts sufficient to support a rational inference of legal causation."  Doc. 13 at 18.  To the extent this argument has been adequately raised, it is without merit.  All Plaintiffs must do to sufficiently allege the causation element of their inadequate training claim is assert that the policy directly caused the constitutional violations in question.  *Ratliff*, — F.3d —, 2020 WL 219011, at *3 (citing *Zarnow*, 614 F.3d at 170).  Here, Plaintiffs aver that Dawes' death and Rosales' injuries were a result of the City's lack of training and failure to implement the necessary DPD training policies.  *See* Doc. 11 at 2, 19.  That is sufficient to survive a Rule 12(b)(6) motion.

**B.   State Law Tort Claims Against Kimpel**

The City asserts that Plaintiffs' wrongful death and survival claims against Kimpel in his individual capacity are subject to dismissal under the Texas Tort Claims Act's ("TTCA") election of remedies statute, which requires a plaintiff to decide at the outset of her case whether an employee acted (1) independently, and is thus solely liable; or (2) within the general scope of his employment such that the governmental unit is vicariously liable.  Doc. 14 at 3, 6-7 (citing TEX. CIV. PRAC. & REM. CODE § 101.106(e)).  The City notes that section 101.106(e) requires that "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."  Doc. 14 at 3 (citation omitted).  The City thus seeks dismissal of the tort claims against Kimpel for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).  Doc. 14 at 1-2.

Plaintiffs respond that their wrongful death and survival claims are not subject to dismissal under section 101.106(e) "because they are not separate tort claims."  Doc. 21 at 20. Rather, Plaintiffs assert that the wrongful death and survival statutes are "simply enabling statutes that allow the deceased's estate and her statutory beneficiaries to bring the common law and other statutory claims the deceased could have brought had she not been killed by the Defendants."  Doc. 21 at 20-21 (citations omitted).

"[A] suit asserting common law claims against a Texas governmental unit . . . is considered to be under the TTCA."  *Quinn v. Guerrero*, 863 F.3d 353, 362 (5th Cir. 2017). (quoting *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 462 (5th Cir. 2010)).  Section 101.106(e) requires a plaintiff to make an irrevocable election at the time of filing suit under the TTCA between suing the governmental entity or proceeding against the government employee

alone. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008). Thus, if a plaintiff sues both a governmental unit and any of its employees under the TTCA, the employee "shall immediately be dismissed on the filing of a motion" by the governmental entity. *Bustos, 599 F.3d at 462*.

In the present case, Plaintiffs sue both the City and Kimpel in tort. Doc. 11 at 20-21. As such, Kimpel is entitled to immediate dismissal of the wrongful death and survival claims filed against him in his individual capacity for lack of jurisdiction. *See Quinn v. Guerrero*, 863 F.3d 353, 360-62 (5th Cir. 2017) (affirming dismissal of tort claims against police officers under TTCA for lack of subject matter jurisdiction); *see also Univ. of Tex. Health Sci. Ctr. at Houston v. Rios*, 542 S.W.3d 530, 533 & n.9 (Tex. 2017) (directing entry of dismissal in favor of state employees pursuant to section 101.106(e) on interlocutory appeal from lower court's refusal to dismiss for lack of jurisdiction).

## IV.   CONCLUSION

For the foregoing reasons, it is recommended that *Defendant City of Dallas's Motion Pursuant to Rule 12(b)(6) to Dismiss the Plaintiffs' Federal Claims Alleged Against It in the Plaintiffs' Second Amended Complaint*, Doc. 13, be **DENIED**, and *Defendant City of Dallas's Motion to Dismiss the Plaintiffs' State Law Claims Against Individual Defendants, Christopher Hess and Jason Kimpel* be **GRANTED** to the extent that the claims against Kimpel be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

**SO RECOMMENDED** on January 27, 2020.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF
RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(B). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).