IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY DAWES, INDIVIDUALLY AND AS THE ADMINISTRATOR OF THE ESTATE OF DECEDENT GENEVIVE A. DAWES, ALFREDO SAUCEDO, AS NEXT FRIEND OF MINORS K.R. AND C.R., AND VIRGILIO ROSALES,  PLAINTIFFS, <br><br>v.<br><br>CITY OF DALLAS, CHRISTOPHER HESS, AND JASON KIMPEL, DEFENDANTS. | § § § § § § § § § § § § § § | CASE NO. 3:17-CV-1424-X-BK |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Judge's Order of Reference, Doc. 60, before the Court for findings and a recommended disposition is *Defendant, Senior Corporal Jason Kimpel's, Motion and Brief and, in the Alternative, Request for Rule 7(a) Reply to Immunity Defense.* Doc. 35. For the reason detailed herein, the motion should be **DENIED**.

**I.   BACKGROUND**

Plaintiffs' claims against Defendant City of Dallas ("the City") arise out of the shooting death of Genevive Dawes ("Dawes") and injuries sustained by Plaintiff Virgilio Rosales ("Rosales") during an encounter with Dallas Police Department ("DPD") officers Defendants Christopher Hess ("Hess") and Jason Kimpel ("Kimpel"). Plaintiffs allege as follows in their *Second Amended Complaint*: During the early morning hours of January 18, 2017, Hess and Kimpel responded to a suspicious person call regarding individuals in a black Dodge Journey at

an apartment complex.  Doc. 11 at 4.  Dawes purchased the vehicle a month earlier from an individual who allegedly was unauthorized to sell it, but Dawes did not know the vehicle had been reported stolen.  Doc. 11 at 5.

Dawes and Rosales were asleep in the vehicle when DPD officers, including Hess and Kimpel, arrived on the scene.  Doc. 11 at 4.  The officers shined flashlights into the vehicle and discovered Dawes asleep in the driver's seat and Rosales asleep in the front passenger seat.  Doc. 11 at 5.  Awakened by the lights and voices and unaware of who was approaching the vehicle, Dawes started the car and attempted to back out.  Doc. 11 at 5.  After a police car drove into her path, Dawes moved her vehicle slightly forward, shifted into reverse, and slowly backed up again.  Doc. 11 at 5.  During the second reverse maneuver,

> Hess and Kimpel fired at least 13 shots through the passenger side window where Rosales was seated, striking Dawes four times in the neck, her right tricep, left arm, upper left chest and right forearm.  Dawes's right earlobe was also partially amputated.  Dawes was transported to Baylor Hospital where she later died as a result of her injuries.

Doc. 11 at 5.

In this action brought pursuant to 42 U.S.C. § 1983, Plaintiffs claim that the City has inadequate training, supervision, and discipline policies with respect to DPD officers' use of force.  Doc. 11 at 12-14.  Additionally, Plaintiffs sue Kimpel under section 1983 for excessive use of force in violation of the Fourth Amendment to the United States Constitution.[1]  Doc. 11 at

---

[1] Plaintiffs brought state law wrongful death and survival actions against all Defendants as well. Doc. 11 at 20-21.  As relevant here, the City moved to dismiss those claims against Kimpel for lack of jurisdiction based on the Texas Tort Claims Act's election of remedies statute.  Doc. 14 at 3, 6-7 (citing TEX. CIV. PRAC. & REM. CODE § 101.106(e)).  That motion is addressed in a separate report and recommendation, filed this date, which recommends that those claims against Kimpel be dismissed without prejudice on that basis.  To avoid redundancy, the Court does not repeat Kimpel's similar arguments or the pertinent analysis here.

3-4, 11-12. Kimpel now moves to dismiss Plaintiffs' section 1983 claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 35.

## II. APPLICABLE LAW

### A. Rule 12(b)(6) Standard

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Put differently, the allegations must be "sufficient to nudge the [plaintiff's] claim across the 'plausibility' threshold." *Doe v. Robertson*, 751 F.3d 383, 390 (5th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In making this determination, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). The court cannot, however, "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (internal citation and quotation marks omitted). In sum, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations and footnote omitted).

### B. Section 1983 and Qualified Immunity

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under section 1983, a plaintiff must allege facts that show that he has been deprived of a right secured

3

by the Constitution and the laws of the United States, and the defendants were acting under color of state law. See *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). The qualified immunity inquiry involves two prongs that the Court must answer affirmatively before an official is subject to liability: (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id.* at 232. In excessive force cases, the second prong of the test "is better understood as two separate inquiries: whether the allegedly violated constitutional right was clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (citation and internal quotation marks omitted). When confronted with a qualified immunity defense at the pleadings stage, the plaintiff must point to facts which, if proven, would defeat the claim of immunity. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citation omitted).

C. **Fourth Amendment**

In the course of a detention or arrest, the right to be free from the use of excessive force − whether deadly or not − is governed by the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 394 (1989). To state a claim for excessive force, a plaintiff must allege "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 487 (5th Cir. 2001) (citation omitted). The

4

second and third elements collapse into a single objective-reasonableness inquiry, in which the court may consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (quoting *Graham*, 490 U.S. at 396).

Generally, courts examine excessive force claims in light of the "totality of the circumstances" to determine whether an officer's actions were objectively unreasonable. *Rockwell v. Brown*, 664 F.3d 985, 991-92 (5th Cir. 2011).  When an officer uses deadly force, however, use of the "'objective reasonableness' balancing test is constrained." *Garza v. Briones*, 943 F.3d 740, 745 (5th Cir. 2019) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004)).  To that end, the use of deadly force violates the Fourth Amendment "unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others."  *Id.* (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018)).

### III.   ANALYSIS

As an initial matter, in a section of his brief captioned "Statement of Undisputed and Relevant Facts," Kimpel details the events of the night in question, citing extensively to evidence he has filed separately, including various DPD officers' body camera video and audio recordings, a ballistics analysis, and Dawes' autopsy report among other documents.  Doc. 35 at 10-21; Doc. 36.  Plaintiffs object to Kimpel's reliance on this evidence because, *inter alia*, Rule 12(b)(6) does not permit consideration of matters outside the pleadings.  Doc. 52 at 12-17.  The Court concurs and thus will not examine the evidence in the context of this motion.  *See Rich v. Palko*, No. 4:16-CV-00870, 2017 WL 2436962, at *2 (E.D. Tex. June 6, 2017) (affirming

magistrate judge's decision to exclude from consideration video and audio exhibits attached to motion to dismiss asserting qualified immunity).

1. *Rule 12(b)(6)*

Kimpel argues that Plaintiffs cannot state a Fourth Amendment claim because he used deadly force in response to the imminent danger to him and other DPD officers presented by Dawes as she "recklessly attempted" to flee the scene in a stolen vehicle, "intentionally rammed" a police car, and tried to "drive through a fence." Doc. 35 at 25.

Viewed in light of the facts set out in Plaintiffs' complaint, they have plainly alleged (1) an injury — Dawes' death and unspecified injuries to Rosales, which (2) resulted directly from the use of force that was objectively and clearly excessive to the need — Hess and Kimpel collectively fired 13 shots into a slowly moving vehicle, whose occupants had just been awakened, and the only suspected crime was that the vehicle had been stolen. *Bazan*, 246 F.3d at 487; *see Peña*, 879 F.3d at 619-20 (holding that allegations by an unarmed minor that officer used a taser to stop her from fleeing, continued to tase her after she fell, that minor was not a threat to third parties or suspected of a crime, and was injured as a result of the incident were stated a plausible excessive force claim).

Accepting as true the facts pled by Plaintiffs, when Kimpel decided to use lethal force, he could not reasonably have believed that Dawes' vehicle presented a threat of serious harm to himself or the other DPD officers present. *Garza*, 943 F.3d at 745. Kimpel's reliance on summary judgment cases at this stage of the proceedings is misplaced. *See* Doc. 35 at 23-25.

2. *Rule 7(a) Reply/Qualified Immunity*

Kimpel next asserts that Plaintiffs' section 1983 claim is barred by the doctrine of qualified immunity, and they have not sustained their burden of negating that defense. Doc. 35

at 26-34. As an alternative to dismissal, Kimpel requests that Plaintiffs be ordered to file a reply pursuant to Rule 7(a), which responds to his qualified immunity defense in detail. Doc. 35 at 37-38, 45.

In cases involving a claim of qualified immunity, it is often appropriate to require a plaintiff to file a detailed reply tailored to that defense. *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). A reply is only necessary, however, when the complaint itself does not meet the required standard — "that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts." *Id.* at 1434. "If the pleadings on their face show an unreasonable violation of a clearly established constitutional right, the defense of qualified immunity will not sustain a motion to dismiss." *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000), *overruled in part on other grounds by McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (en banc).

In the instant case, the Court concludes that a Rule 7(a) reply would not assist either the Court or the parties at this stage of the litigation. Plaintiffs' complaint thoroughly details their allegations against Kimpel and, as stated above, they have sufficiently pled facts which, if proved, would demonstrate that he violated Dawes' and Rosario's Fourth Amendment rights. Turning to the second prong of the test for qualified immunity, it has long been clearly established that although a police officer's power to make an arrest carries with it the right to use some degree of physical coercion or threat thereof, "the permissible degree of force depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee." *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (citation omitted).

Kimpel argues that "[c]ourts have consistently held that an Officer has Qualified Immunity for his use of deadly force against suspect fleeing in a motor car in close proximity to the Officer and others." Doc. 35 at 27. While that may be true, the analysis is nevertheless nuanced. In cases involving a moving vehicle, the objective reasonableness of a decision to use deadly force depends on whether the vehicle posed a threat of harm in the particular circumstances faced by the officer. *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 412 (5th Cir. 2009). The mere fact that a driver is fleeing does not always make it objectively reasonable to discharge a firearm. *Id.* For instance, in *Lytle*, an officer was denied qualified immunity for firing at a fleeing car and killing a passenger despite the fact that the officer suspected the car was stolen, observed it leaving a known drug location, and engaged it in a high-speed chase, during which the driver crashed into another car and then fled the accident scene. *Id.* at 416-17.

Cases addressing fleeing suspects often focus on the position of the police officer relative to the vehicle. *Hathaway v. Bazany*, 507 F.3d 312, 321 (5th Cir. 2007). In *Hathaway*, for example, the officer was held entitled to qualified immunity because he was in close proximity to the car that he had attempted to pull over, which then accelerated directly towards him. *Id.* at 316. The officer could not jump out of the path of the vehicle, which clipped his left leg, and he fatally shot the driver — not even aware of whether he had drawn and fired before, during, or immediately after the car struck him. *Id.* at 316, 322; *see also Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992) (holding officer entitled to qualified immunity for fatally shooting motorist, whom he had observed holding a beer, speeding, and crashing his vehicle, and who was within 15 feet of running the officer down when the officer filed his weapon).

In *Lytle*, the police officer denied immunity had fired his weapon repeatedly at a car that was three or four houses down the street and driving away from him. 560 F.3d at 414. The court observed that while the officer may have been in significant danger earlier in the encounter, "an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased." *Lytle*, 560 F.3d at 413-14 (stating that "*Scott*[*v. Harris*, 550 U.S. 372 (2007)] did not declare open season on suspects fleeing in motor vehicles" being that "the real inquiry is whether the fleeing suspect posed such a threat that the use of deadly force was justifiable."); *see also Mullenix v. Luna*, 136 S.Ct. 305, 312 (2015) (distinguishing case in which an officer fatally shot a speeding, reportedly intoxicated fugitive who had threatened to kill police officers waiting in his path from cases which "involve suspects who may have done little more than flee at relatively low speeds."). In sum, Plaintiffs have pled a facially plausible claim that Kimpel's use of deadly force was excessive and unreasonable for purposes of denying qualified immunity. *Waller*, 922 F.3d at 599. Because they have done so with "sufficient precision and factual specificity," a Rule 7(a) reply is not necessary. *Schultea*, 47 F.3d at 1433.

## IV.   CONCLUSION

For the foregoing reasons, it is recommended that *Defendant, Senior Corporal Jason Kimpel's, Motion and Brief and, in the Alternative, Request for Rule 7(a) Reply to Immunity Defense*, Doc. 35, be **DENIED**.

**SO RECOMMENDED** on January 27, 2020.

*[signature]*
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF
## RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(B).  An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).