UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARY DAWES, et. al., § § *Plaintiffs,* § § v. § § CITY OF DALLAS, et. al., § § *Defendants.* § § § | Civil Action No. 3:17-CV-01424-X-BK |

# **MEMORANDUM OPINION AND ORDER**

The Court considers the reports of the United States Magistrate Judge in this action, which was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636.

On June 27, 2017, the plaintiffs Mary Dawes, individually and as administrator of Genevive A. Dawes's estate, Alfredo Saucedo as next of friend of minors K.R. and C.R., and Virgilio Rosales (collectively "plaintiffs") filed a second amended complaint [Doc. No. 11] alleging defendant officers Christopher Hess and Jason Kimpell (collectively "defendant officers") and the City of Dallas violated 42 U.S.C. § 1983 when the defendant officers shot at Genevive Dawes and Rosales while they were backing out of a parking space. Genevive Dawes later died at a hospital as a result of her injuries. The plaintiffs specifically allege that (1) the defendant officers used excessive force against Genevive Dawes in violation of § 1983 and the Fourth Amendment; (2) the City of Dallas violated § 1983 and the Fourth Amendment by failing to train the defendant officers with regards to use of deadly force and proper

1

detention and seizure procedures; and (3) the defendant officers' conduct entitle the plaintiffs to compensation under the Texas wrongful death and survival action statutes.

In response, the City of Dallas filed a motion to dismiss the § 1983 claim against itself and another motion to dismiss the state law claims against the defendant officers [Doc. Nos. 13 & 14]. Later, Kimpel filed a motion to dismiss the § 1983 claim against himself and, in the alternative, requests that the plaintiffs be required to file a reply addressing Kimpel's sovereign immunity defense assertions [Doc. No. 35].

On January 27, 2020, the assigned Magistrate Judge issued two Findings, Conclusions, and Recommendations ("Reports") in which she recommends that this Court deny the City of Dallas's motion to dismiss the § 1983 claim against itself but grant the City of Dallas's motion to dismiss the state law claims against Kimpel [Doc. No. 71]. The Magistrate Judge did not recommend any action regarding the motion to dismiss the state law claims as applied to Hess due to a prior order staying the case as to Hess until his criminal trial concluded [Doc. No. 63]. That trial has since concluded, and the stay was recently lifted [Doc. No. 85]. Lastly, the Magistrate Judge recommends that this Court deny Kimpel's motion to dismiss the § 1983 claim against himself and his request that the plaintiffs file a reply to his qualified immunity defense [Doc. No. 72].

Kimpel and the City of Dallas timely objected to the recommendations [Doc. Nos. 73 & 74] but the plaintiffs did not. Having carefully reviewed the pleadings, the

record in this case, the Reports, and Kimpel and City of Dallas's objections to the Reports, the Court **ADOPTS IN PART** and **REJECTS IN PART** the Magistrate Judge's findings and recommendations as set forth in her Reports.

I.

28 U.S.C. § 636(b)(1)(B) gives magistrate judges the "authority to issue findings and recommendations regarding dispositive motions in cases referred to them."[1] The statute allows the parties to file written objections within 14 days of the proposed findings and recommendations and for a de novo determination of matters "to which objection is made."[2] The objections serve "to narrow the dispute" and allow district judges "to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."[3] Additionally, § 636(b)(1) "does not on its face require any review at all . . . of any issue that is not the subject of an objection."[4] Consistent with § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(3), the Court reviews the findings and recommendations in the Magistrate Judge's Reports. In doing so, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."[5]

The objections at issue all relate to pending motions to dismiss. For motions to dismiss, under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the

---

[1] *Ware v. Colvin*, 2013 WL 3829472, at *1 (N.D. Tex. July 24, 2013) (Solis, J.).

[2] 28 U.S.C. § 636(b)(1).

[3] *Thomas v. Arn*, 474 U.S. 140, 147 & n. 6 (1985).

[4] *Id.* at 149.

[5] FED. R. CIV. P. 72(b)(3).

3

pleadings by "accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[6]  To survive a motion to dismiss, the plaintiffs must allege enough facts "to state a claim to relief that is plausible on its face."[7]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[9] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[10]

## II.

### A.

Kimpel objects to the Magistrate Judge's determination to not consider the body camera video attached to his motion to dismiss.

Generally, "[i]n determining whether to grant a motion to dismiss, the district court must not go outside the pleadings and must accept all well-pleaded facts as true, viewing those facts most favorably to the plaintiff."[11]  However, "[w]hen a

---

[6] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted).

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Id.*; *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

[10] *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

[11] *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents."[12] Although the Fifth Circuit has not enunciated a test for when a document is central to a plaintiff's claim, a document tends to be central when it is necessary to establish an element of a plaintiff's claim.[13] A recurring example of a central document is a contract attached to a motion to dismiss in a breach of contract case.[14] In such a case, the attached contract is central because its interpretation is necessary for the case's resolution. Lastly, in assessing whether a document is central, a court should consider whether the plaintiff objects to the inclusion of the attached document.[15]

The Magistrate Judge held that it could not consider matters outside of the pleadings and so determined not to consider the body camera recordings. Kimpel objects that a court may review documents attached to a motion to dismiss if the documents are referred to in the complaint and are central to the plaintiff's claims. Kimpel argues that the body camera videos are referenced five times in the plaintiffs'

---

[12] *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

[13] *Hong Kong Aroma Star Int'l LLC v. Elta MD Inc.*, 2019 WL 2357529, at *3 (N.D. Tex. June 4, 2019) (Fish, J.) (citing *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. Apr. 26, 2011) (Lynn, J.)).

[14] *See, e.g., Hong Kong Aroma*, 2019 WL 2357529, at *3; *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.

[15] *Scanlan*, 343 F.3d at 536 ("The fact that the plaintiffs did not object to, or appeal, the district court's consideration of those documents [attached to a motion to dismiss] was central to this Court's approval of that practice" of allowing documents attached to a motion to dismiss to be considered by a district court.); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d at 499 (5th Cir. 2000) ("In so attaching [the documents to its motion to dismiss], the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated.").

5

second amended complaint and are central to their claims.

Although a court may consider documents that are referred to in a complaint and are central to a plaintiff's claims, the body camera recordings are not central to the plaintiffs' claims in this case because they are not necessary to establish an element of the plaintiffs' federal and state law claims against Kimpel in the same way that a contract is necessary for a breach of contract claim. Indeed, although not the subject of his objection to the Magistrate Judge's Report, Kimpel attached other evidence to his motion to dismiss that could also establish what occurred at the scene, including a ballistics analysis, Genevive Dawes's autopsy report, and Rosales's Medical Report.[16] Additionally, the plaintiffs objected to the inclusion of these recordings in their response to Kimpel's motion to dismiss [Doc. No. 52]. Plaintiffs' objection is of particular concern because the Fifth Circuit's allowance of district courts to consider documents attached to a motion to dismiss was premised on the plaintiffs not objecting to those documents being considered.[17]

For these reasons, the Court finds the body camera recordings attached to Kimpel's motion to dismiss are not central to the plaintiffs' claims against Kimpel. So, the Court will not consider these recordings in the context of Kimpel's motion to dismiss.

---

[16] Appendix to Kimpel's Motion to Dismiss Exhibits 6, 9, & 10 [Doc. No. 36].

[17] *Scanlan*, 343 F.3d at 536 ("The fact that the plaintiffs did not object to, or appeal, the district court's consideration of those documents [attached to a motion to dismiss] was central to this Court's approval of that practice [allowing documents attached to a motion to dismiss to be considered by a district court]"); *Collins*, 224 F.3d at 499 ("In so attaching [the documents to its motion to dismiss], the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated.").

B.

Kimpel objects to the Magistrate Judge's finding that, taking the plaintiffs' allegations in their second amended complaint as true, Kimpel violated clearly established Fourth Amendment law when he fired on Rosales and Genevive Dawes while they were backing out of a parking space.

In determining whether a violated constitutional right is clearly established for qualified immunity purposes, "[t]he central concept is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."[18] Additionally, "[w]hile [the Supreme] Court's case law do[es] not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."[19] This means that clearly established law should not be defined "at a high level of generality" but must be "particularized to the facts of the case."[20] Courts must look to the facts in precedent cases when assessing whether a right is clearly established.[21]

In her analysis, the Magistrate Judge focused on Fourth Amendment excessive force cases involving police officers shooting at motor vehicles. After comparing cases

---

[18] *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 417 (5th Cir. 2009) (quotation marks omitted) (alterations in original).

[19] *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quotation marks omitted) (last alteration in original).

[20] *Id.* (quotation marks omitted).

[21] *See, e.g.*, *Mullenix v. Luna*, 136 S. Ct. 305, 309–10 (2015).

where the suspect is driving towards versus away from a police officer, the Magistrate Judge determined that the facts of this case were similar to *Lytle v. Bexar County, Texas*, where the court denied qualified immunity to the police officer for firing at a fleeing car that was three or four houses down the street.[22] The Fifth Circuit in *Lytle* held that "it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat to the officer or others" and that "this holds as both a general matter and in the more specific context of shooting a suspect fleeing in a motor vehicle."[23] The Magistrate Judge thus determined, taking the plaintiffs' allegations in their second amended complaint as true, Kimpel violated a clearly established right under the Fourth Amendment.

Kimpel objects that *Lytle* is not on point, as the car in *Lytle* was several houses down the street whereas the car in this case was only several feet away. Kimpel instead argues that *Sanchez v. Edwards* is relevant.[24] In *Sanchez*, a police officer who fired on a suspect in a vehicle was granted qualified immunity when, within feet of the officer, the suspect accelerated towards him.[25] The Fifth Circuit distinguished *Sanchez* from *Lytle*, stating that it based its *Lytle* decision "on evidence suggesting that the officer was three-to-four houses away from the vehicle when he fired his weapon and that the vehicle was moving away from, rather than towards, him at the

---

[22] 560 F.3d at 407–08, 417–18.

[23] *Id.* at 417–18 (citations omitted).

[24] 433 F. App'x 272 (5th Cir. 2011).

[25] *Id.* at 273–74, 276.

8

time."[26]

The Court agrees with the Magistrate Judge's analysis. According to the plaintiffs' allegations in their second amended complaint, "Dawes drove in reverse at a very slow rate of speed" when Kimpel and Hess fired at her and that "no one was in the back of Dawes' vehicle as she backed up."[27] Taken as true, these allegations make this case similar to *Lytle* (where a suspect was fleeing from the officers) and unlike *Sanchez*. The police officers in *Sanchez* had to react to an "abrupt change of direction" from the suspect who was now driving directly towards one of the officers, who was only a few feet away.[28] These circumstances do not fit here, as Genevive Dawes allegedly did not accelerate towards a police officer that was standing a few feet in front of her, as occurred in *Sanchez*.[29] Indeed, Genevive Dawes allegedly reversed "at a very slow rate of speed" with no police officer behind her.[30] Thus, there was no need to react to an "abrupt change of direction" in this case just as there was not in *Lytle*. The second amended complaint's allegations, taken as true, illustrate that Dawes did "not pose a sufficient threat to [Kimpel] or others."[31]

For these reasons, the Court, taking the allegations in the plaintiffs' second amended complaint as true, finds that *Lytle* gave "reasonable warning" to Kimpel that his conduct in firing at Genevive Dawes and Rosales "violated constitutional

---

[26] *Id.* at 276.

[27] Plaintiffs' Second Amended Complaint ¶¶ 15, 18 [Doc. No. 11].

[28] *Sanchez*, 433 F. App'x at 275.

[29] *Id.*

[30] Plaintiffs' Second Amended Complaint ¶¶ 15, 18 [Doc. No. 11].

[31] *Lytle*, 560 F.3d at 417–18.

9

rights" and thus violated clearly established law, namely the Fourth Amendment.[32]

## C.

The City of Dallas objects to the Magistrate Judge's findings that, taking the allegations in the second amended complaint as true, the plaintiffs sufficiently pled that the City of Dallas had an inadequate training policy and was deliberately indifferent in adopting this policy under their § 1983 failure to train claim.

A failure to train claim requires a plaintiff to show "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question."[33] A failure to train claim must also be brought against the municipality's final policymaker.[34] To establish inadequate training procedures, "a plaintiff must allege with specificity how a particular training program is defective."[35] To show deliberate indifference, "[n]otice [to the municipality] of a pattern of similar violations is required."[36] "A pattern is tantamount to official policy when it is so common and well-settled as to constitute a custom that fairly represents municipal policy."[37] In other words, the municipal employees' actions "must have occurred for so long or so frequently that the course of

---

[32] *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc).

[33] *Ratliff v. Aransas Cty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020).

[34] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

[35] *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010).

[36] *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (quotation marks omitted).

[37] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quotation marks omitted).

conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees."[38] In demonstrating this pattern, "[t]he prior acts must be fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act must have involved injury to a third party."[39] The Fifth Circuit has found that twenty-seven prior incidents of excessive force over a three-year period were not sufficiently numerous to constitute a pattern.[40] Notice to the municipality can be established through demonstrating such a pattern.[41]

The Magistrate Judge found that the plaintiffs adequately pled the City of Dallas had an inadequate use-of-force policy in their second amended complaint. Particularly, she found the following allegations to be determinative on the first prong of the analysis (an inadequate policy): six shootings of unarmed, nonthreatening individuals between 2012 and 2015 in which some of the officers were not disciplined, a 1987 report criticizing the City of Dallas's use of force policy, and that, in 2012, the Dallas Police Department Chief did not implement numerous policies addressing officer training and use of force techniques, which he said he would, after one of the aforementioned shootings took place. Regarding the second prong of analysis (deliberate indifference), the Magistrate Judge found that the six shootings were similar to the shooting in this case insofar as Genevive Dawes was

---

[38] *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984).

[39] *Id.* (quoting *Davis v. City of N. Richland Hills*, 406 F.3d 375, 386 (5th Cir.2005).

[40] *Fuentes v. Nueces County*, 689 F. App'x 775, 778 (5th Cir. 2017).

[41] *Thomas v. City of Galveston, Tex.*, 800 F.Supp.2d 826, 843–44 (S.D. Tex. Aug. 1, 2011).

11

also an unarmed, nonthreatening individual. Thus, the Magistrate Judge concluded these shootings were sufficient to establish a pattern of constitutional violations to show deliberate indifference at this stage of the proceedings.

The City of Dallas objects to the Magistrate Judge's use of the six shooting incidents as supporting deliberate indifference.[42] First, citing *Fuentes v. Nueces County*, the City of Dallas argues that six shootings are not sufficiently numerous to establish a pattern.[43] The Fifth Circuit in *Fuentes*, citing two prior Fifth Circuit cases, stated that although "there is no rigid rule regarding numerosity, we have previously held that 27 prior incidents of excessive force over a three-year period, . . . and 11 incidents offering 'equivocal evidence' of unconstitutional searches over a three-year period . . . were not sufficiently numerous to constitute a pattern."[44] As six incidents within a three-year period is well below twenty-seven (that was still insufficient), the City of Dallas argues the plaintiffs have failed to establish a pattern and thus cannot establish that the Dallas City Council was deliberately indifferent in adopting the alleged inadequate use of force policy.

The Court agrees with the City of Dallas. Six incidents of excessive force within a five-year period is not sufficient under Fifth Circuit precedent to constitute a pattern "so common and well-settled as to constitute a custom that fairly represents

---

[42] The City of Dallas purportedly also objects to the inadequate training procedures prong of the qualified immunity analysis but, upon closer inspection, these objections pertain to the deliberate indifference prong and so are listed here as such.

[43] 689 F. App'x 775 (5th Cir. 2017).

[44] *Id.* at 778 (citing *Peterson*, 588 F.3d 838 at 850–52 & *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002)).

municipal policy" and does not "warrant the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees."[45] The Fifth Circuit case concerning the twenty-seven incidents of excessive force, *Peterson v. City of Fort Worth, Texas*, involved a municipal liability claim against the City of Fort Worth.[46] In holding that twenty-seven incidents were not enough to constitute a pattern, the Fifth Circuit noted that the record did not provide sufficient context.[47] Specifically, the Fifth Circuit said the record did not show "the size of Fort Worth's police department or how many arrests were made by the department" within the three-year period or provide comparisons to other cities.[48] Here, the plaintiffs have not alleged any such facts that would give similar context to the alleged six incidents. Although there is "no rigid rule as to numerosity," given that the Fifth Circuit has found twenty-seven incidents of excessive force within a three-year period insufficient to establish a pattern without proper context, the Court holds in this instance that six incidents of excessive force within a five-year period, as currently pled, are not sufficient as well.[49]

For these reasons, the Court finds that, taking the allegations in the current

---

[45] *Peterson*, 588 F.3d at 850 (quotation marks omitted); *Webster*, 735 F.2d at 842.

[46] 588 F.3d at 847.

[47] *Id.* at 851–52, n.4.

[48] *Id.* at 851 (additionally stating "[w]e have previously indicated that the size of a police department may be relevant to determining whether a series of incidents can be called a pattern."). The Fifth Circuit in *Peterson* also noted that the Fort Worth Police Department had 1,500 officers. *Id.* at 852. A passing glance at the Dallas Police Department's website shows they currently have at least 3,300 officers, over twice as many as Fort Worth at the time of *Fuentes*. DALLAS POLICE DEPARTMENT, https://dallaspolice.net/join-dpd (last visited June 11, 2020). However, the Court notes that the City of Dallas may not have had this number of officers at the time of the incident at issue in this case.

[49] *Fuentes*, 689 F. App'x at 778.

complaint as true, the plaintiffs have failed to state their § 1983 failure to train claim.

III.

For the reasons stated above, the Court is of the opinion that the findings and conclusions of the Magistrate Judge in her Reports are partially correct. The Court therefore **ADOPTS** the Magistrate Judge's Reports as the findings and conclusions of the Court except as they relate to the City of Dallas's motion to dismiss the claim against itself [Doc. Nos. 71 & 72]. The Court **REJECTS** the findings and conclusions of the Magistrate Judge's Reports as they relate to the City of Dallas's motion to dismiss the claim against itself [Doc. No. 71].

Accordingly, the Court **GRANTS** the City of Dallas's motion to dismiss the plaintiffs' claim against itself [Doc. No. 13] and **DISMISSES** this claim **WITHOUT PREJUDICE**. The Court **GRANTS IN PART** the City of Dallas's motion to dismiss the state law claims against officers Kimpel and Hess [Doc. No. 14]. The Court **GRANTS** this motion as applied to officer Kimpel and **DISMISSES** the state law claims against officer Kimpel **WITHOUT PREJUDICE** for lack of jurisdiction. However, the Court does not rule at this time on this motion as applied to officer Hess. Lastly, the Court **DENIES** Kimpel's motion to dismiss the plaintiffs' claims as to himself and his alternative request to require the plaintiffs to file a reply to his sovereign immunity defense [Doc. No. 35].

The Court anticipates granting the plaintiffs' request to replead their failure to train claim against the City of Dallas after the remaining motion to dismiss is disposed of but does not do so now.

**IT IS SO ORDERED** this 2nd day of July, 2020.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE