IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY DAWES, ET. AL, | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | CASE NO. 3:17-CV-1424-X-BK |
| | § | |
| CITY OF DALLAS, ET. AL, | § | |
| DEFENDANTS. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the District Judge's referral, Doc. 60, the Court now considers Defendant

City of Dallas's *Motion pursuant to Rule 12(b)(6) to Dismiss the Plaintiffs' Federal Claim*

*alleged against it in the Plaintiffs' Third Amended Complaint, and Brief in Support*. Doc. 95.

Upon review, the motion should be **DENIED**.

## I.  BACKGROUND

Plaintiffs filed suit against Defendants, including the City of Dallas (the "City"), for the

death of Genevive Dawes ("Dawes") and injuries sustained by Plaintiff Virgilio Rosales

("Rosales") at the hands of City police officers Defendants Christopher Hess ("Hess") and Jason

Kimpel ("Kimpel"). Doc. 91 at 1.

Plaintiffs' Third Amended Complaint alleges as follows.  Early in the morning on

January 18, 2017, Dawes and Rosales slept in a black Dodge Journey parked in an apartment

complex. Doc. 91 at 4.  The vehicle was Dawes's, purchased a month earlier. Doc. 91 at 4.  An

unidentified person called 911 regarding a "suspicious person" in Dawes's vehicle. Doc. 91 at 4.

Hess and Kimpel, with other City police officers, responded to the call. Doc. 91 at 4.  The

officers approached the car with flashlights.  Doc. 91 at 5.  Inside, Dawes and Rosales were "clearly asleep."  Doc. 91 at 5.

Awakened by lights and voices and unaware of who was approaching, Dawes started her vehicle and attempted to reverse out of her parking spot.  Doc. 91 at 5.  An officer positioned a police car in Dawes's path.  Doc. 91 at 5.  Dawes stopped the car and, moving slowly, drove the car slightly forward, shifted into reverse, and backed up again.  Doc. 91 at 5.  No one was behind Dawes's reversing vehicle.  Doc. 91 at 6.  At this moment, despite neither Dawes nor Rosales displaying weapons, Hess and Kimpel fired at least 13 shots through the passenger window, striking Dawes in the neck, right tricep, left arm, upper left chest, and right forearm.  Doc. 91 at 5-6.  She was transported to Baylor Hospital and later died from her wounds.  Doc. 91 at 5. Rosales suffered minor physical injuries from broken glass.  Doc. 91 at 5.

Plaintiffs brought suit under 42 U.S.C. § 1983, claiming the City, *inter alia*, "knew or should have known that the training provided to Officers Hess and Kimpel was inadequate or nonexistent."  Doc. 91 at 8.  This inadequate training, Plaintiffs claim, caused Dawes's death and Rosales's injuries.  Doc. 91 at 9.  After multiple amended complaints, Doc. 2, Doc. 7, Doc. 11, a motion to dismiss, Doc. 13, and an order granting leave to replead, Doc. 90, the Plaintiffs' claims against the City have been whittled down to one: a failure to train its officers.  Doc. 91 at 13. This motion followed.  Doc. 95.

## II.    APPLICABLE LAW

### A.  Rule 12(b)(6) Standard

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ratliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 284

(5th Cir. 2020) (holding that the *Twombly* pleading standard applies to section 1983 municipal liability claims). In making this determination, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). If the pleaded factual content allows the court to draw a reasonable inference that the defendant is liable, then the claim is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (internal citation and quotation marks omitted). In sum, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations and footnote omitted).

## B. Section 1983

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under section 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States, and (2) the defendants were acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

## C. Municipal Liability & Failure to Train

A city does not automatically incur section 1983 liability for injuries caused solely by its employees, and it cannot be held liable on a *respondeat superior* theory. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691, 694 (1978). Rather, to establish

municipal liability under section 1983 requires proof of three elements: (1) a policymaker; (2) an official policy or custom; and (3) that the policy or custom was the moving force behind the violation of a constitutional right. *Id.* The third *Monell* prong encompasses both a causal link ("moving force") and the city's requisite degree of culpability (deliberate indifference to federally protected rights). *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998).

Failure to train is one theory of municipal liability. *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010). The deliberate indifference and causation standards above apply to this claim. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (citing *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)). Thus, to adequately state a failure-to-train claim, a plaintiff must plead facts plausibly establishing that (1) the city's training procedures were inadequate; (2) the city was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the constitutional violations in question. *Ratliff*, 948 F.3d at 285 (citing *Zarnow*, 614 F.3d at 170).

Moreover, when an individual sues a municipality for a failure to train violation involving alleged police misconduct, he must provide fair notice to the city, which requires more than generically restating the elements of the claim. Allegations that provide such notice can include, but are not limited to, (1) past incidents of officer misconduct involving other individuals; (2) multiple harms by officers to the same plaintiff; (3) the involvement of multiple officials in the misconduct at issue; or (4) misconduct that occurred in the open. *Thomas v. City of Galveston*, 800 F.Supp.2d 826, 843-44 (S.D. Tex. 2011) (collecting cases). "Those types of details, or any other minimal elaboration a plaintiff can provide, help to satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim

4

rests . . . and permit the court to infer more than the mere possibility of misconduct." *Id.* at 844 (cleaned up, *citing Twombly*, 550 U.S. at 555 n.3, *and Ashcroft*, 556 U.S. at 679).

At the motion to dismiss stage, a plaintiff's section 1983 allegations must be accepted as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993).

### III.    ANALYSIS

In its memorandum opinion overruling the undersigned magistrate judge's recommendation and dismissing without prejudice Plaintiffs' previous iteration of their failure-to-train claim, the Court determined that Plaintiffs did not establish a pattern that would support a finding of deliberate indifference because they failed to allege sufficiently numerous instances of similar violations. Doc. 87 at 12 ("the City of Dallas argues that six shootings [within a five-year period] are not sufficiently numerous to establish a pattern . . . the Court agrees."). The Court cited *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838 (5th Cir. 2009) (holding in the context of a motion for summary judgment that 27 complaints of excessive force within a three-year period was insufficient to establish a pattern).

In their third amended complaint, Plaintiffs attempt to address the deficiencies noted by the Court. They allege new details about the City's threat assessment training and its application. Doc. 91 at 14. They explain how this policy allegedly violates existing law. Doc. 91 at 15. And, perhaps most importantly, Plaintiffs have now expanded their complaint to assert at least 50 instances where City police officers shot unarmed individuals as a direct result of their allegedly inadequate training. Doc. 91 at 15-16.

Despite these amendments, the City again argues Plaintiffs fail to allege sufficient facts to support a failure-to-train claim. Doc. 95 at 3. The City maintains that Plaintiffs still have not

pointed to any facts showing (1) any specific inadequacies in the City's training, Doc. 95 at 6-7; (2) the City policymaker's deliberate indifference in adopting the training policy, Doc. 95 at 7; or (3) that the policy directly caused the alleged constitutional violation, Doc. 95 at 8.  The City further argues that Plaintiffs have failed "to allege non-conclusory facts from which the Court may reasonably infer the City's final policymaker was . . .  aware of the alleged inadequate training." Doc. 95 at 7; *but see* Morgan v. Hubert, 335 Fed. Appx. 466, 472 (5th Cir. 2009) (plaintiffs are not required to plead facts which are uniquely within the knowledge of the defendants to survive a motion to dismiss).  Notably, the overwhelming majority of cases cited by the City to support its motion were not decided on a motion to dismiss.  *See, e.g.*, Doc. 95 at 3-4; *see also* S.E.C. v. Cuban, No. 3:08-CV-2050-D, 2013 WL 791405, at *5 (N.D. Tex. March 5, 2013) (Fitzwater, J.) (noting that "summary judgment is governed by a higher standard than the one that applies when determining the plausibility of a claim at the Rule 12(b)(6) stage").

Plaintiffs disagree with the City's position, arguing that their pleading is sufficient because they specifically identify the deficient training, Doc. 100 at 8, show a pattern of incidents resulting from the deficient training that could establish the City's deliberate indifference, Doc. 100 at 10, and allege this deficient training was the cause behind Hess and Kimpel shooting Dawes and injuring Rosales.  Doc. 100 at 14.

### A.  Inadequate Policy or Procedure

"In the context of municipal liability . . . it is exceedingly rare that a plaintiff will have access to or personal knowledge of specific details regarding the existence or absence of internal policies or training procedures prior to discovery." *Thomas*, 800 F.Supp.2d at 842.  Accordingly, a pleading may survive a motion to dismiss with minimal, general factual allegations about what the policy is. *Id.* at 842-43.  To establish that the city's training procedures were inadequate, it is

6

sufficient for the plaintiff to generally plead the training was deficient and to provide some facts identifying the training and demonstrating the alleged inadequacy.  *See Ybarra v. Davis*, ---F.Supp.3d---, 1:19-CV-1099-RP, 2020 WL 5709254, *7 (W.D. Tex. Sept. 24, 2020) (denying motion to dismiss municipal liability claim because "Plaintiff has not had access to discovery, and is thus limited in his ability to specifically describe the policies, practices, and trainings of Bastrop County.").  Under this standard, Plaintiff succeeds.

Indeed, Plaintiffs' pleading is quite specific.  Plaintiffs allege that the City failed to train its officers in the use of proper and appropriate detention and seizure procedures, the use of excessive and/or deadly force, and the proper use of less deadly means of detention.  Doc. 91 at 13-14.  Plaintiffs assert that these failures all stem from the same source—the City's threat assessment training.  Doc. 91 at 14-15.  They further claim that threat assessment training is the "foundational analysis for the level of force to be used in any particular situation" and teaches officers that they may use deadly force when they *believe* a suspect poses a threat of serious bodily harm or death to the officer or others, even if no immediate threat exists.  Doc. 91 at 14-15.  Plaintiffs contend that this teaches officers to make a subjective evaluation instead of the objective determination the law requires.  Doc. 91 at 14-15; *see L.A. Cty. v. Rettele*, 550 U.S. 609, 614 (2007) (noting that the test of reasonableness under the Fourth Amendment is an objective one) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  Plaintiffs additionally claim this training is, thus, unconstitutionally inadequate because it is directly contrary to established law which states deadly force is not justified when no immediate threat exists.  Doc. 91 at 15.  Plaintiffs allege said training caused Dawes's death, Rosales's injuries, and dozens of other instances of City police officers shooting unarmed individuals.  Doc. 91 at 15.  Taking

these allegations as true, as the Court must, Plaintiffs have plausibly alleged that the City's

training procedures with respect to the use of force are inadequate.

### B. Deliberate Indifference

There are two ways to establish deliberate indifference in the City's adoption of its

training policy; a plaintiff can either (1) demonstrate a pattern of violations fairly similar to what

ultimately transpired in the instant case, or, (2) demonstrate that "single-incident" liability exists

because it was highly predictable that a constitutional violation would result from a particular

failure to train. *Flanagan v. City of Dallas, Tex.*, 48 F.Supp.3d 941, 956 (N.D. Texas 2014). For

example, because it is obvious that a city must train police officers in the constitutional

limitations on the use of deadly force, a failure to do so is deliberate indifference. *City of

Canton, Ohio v. Harris*, 489 U.S. 378, 390 n. 10 (1989). Alternatively, if police, when

exercising their discretion, so often violate constitutional rights that the need for further training

is obvious to city officials, the failure to implement further training can show deliberate

indifference. *Id.* However, there is no rigid rule of how many violations of constitutional rights

must occur to establish a pattern. *Fuentes v. Nueces Cnty, Tex.*, 689 Fed. Appx. 775, 778 (5th

Cir. April 27, 2017). And the more flagrant or severe the violation, the fewer incidents required

to establish that pattern. *See Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) (en

banc).

In the instant case, Plaintiffs allege that Hess and Kimpel shot and killed Dawes and

injured Rosales, both of whom were unarmed, and that the shooting of unarmed individuals by

City police officers is not a novel or unusual occurrence. *See* Doc. 91 at 5, 15-16 (Plaintiffs

allege the City's inadequate training was the moving force behind the shooting of 36 unarmed

individuals between 2002 and 2013). They further allege that criticism of the City's training

8

with respect to such incidents and promises to implement changes in that regard also is not new. Doc. 91 at 17.  Further, Plaintiffs allege that in the five years prior to the incident in question, City police officers shot at least 22 other unarmed individuals as a direct result of the inadequate threat assessment training.  Doc. 91 at 15-16.  Combined, Plaintiffs now allege over 50 instances of City police officers shooting unarmed individuals.  Doc. 91 at 15-16.

Moreover, the seriousness of the pattern of unconstitutional harm alleged by Plaintiffs here, to-wit, the pattern of City police shootings of unarmed individuals, is also highly significant to the Court's analysis, *see Bennett*, 728 F.2d at 768, and greatly contrasts with that of the cases cited by the Court in its previous opinion, to-wit: (1) alleged pattern of excessive force in the form of beatings, *Peterson*, 588 F.3d at 843-44; (2) alleged pattern of illegal entries into private residences, *Pineda v. City of Houston*, 291 F.3d 325, 327, 329 (5th Cir. 2002); and (3) alleged pattern of inmate suicides resulting from failure to train guards in matters of inmate safety.  *Fuentes*, 689 Fed. Appx. at 776-778.  Because of the severity of the alleged constitutional violation in this case, however, fewer similar incidents are required to establish a pattern.  *See Bennett*, 728 F.2d at 768; *see also Oporto v. City of El Paso*, No. EP-10-CV-110-KC, 2010 WL 3503457, at *5 (W.D. Tex. Sept. 2, 2010) (finding 32 incidents of alleged excessive deadly force over a 15-year period sufficient to survive city's motion to dismiss).

In this context, taken as true, the incidents alleged by Plaintiffs evince an escalating pattern of the use of deadly force against unarmed individuals that plausibly establishes deliberate indifference at this initial pleading stage of the case.  *See* Doc. 91 at 17 (alleging the shootings have occurred more frequently in recent years).  Whether these instances are sufficiently similar to prove Plaintiffs' claim of inadequate training will be more readily discernable after discovery has occurred.  *See Twombly*, 550 U.S. at 555 (pleadings can survive

motion to dismiss even if they are factually doubtful); *see also Leatherman*, 507 U.S. at 168 (noting that courts and parties must rely on summary judgment and discovery, not motions to dismiss, to weed out unmeritorious section 1983 claims).

Plaintiffs also allege sufficient facts to show the City was aware of the shootings and of the problem caused by the allegedly inadequate training, pointing to comments made by the now-former Chief of Police, the criticisms aimed at the police department, and the policies the now-former Chief of Police proposed to implement.  Doc. 91 at 17-19 (averring the City has not implemented the proposed policies).  Thus, Plaintiffs have adequately pled that the City was deliberately indifferent in adopting its training policy.

### C.  Causation

The causation element requires a plaintiff to plead "specific allegations supporting a plausible causation inference."  *Ratliff*, 948 F.3d at 285.  At this stage, it is sufficient for Plaintiff to simply identify the inadequate training and plead it was the moving force behind the alleged constitutional violation.  *See Ybarra*, 2020 WL 5709254 at *8.  Here, Plaintiffs do just that. They allege the City's excessive/deadly force training, including the subjective threat assessment training, was "the moving force" behind Dawes's death and Rosales's injuries.  Doc. 91 at 14-16. In doing so, Plaintiffs connect the dots, pleading that Hess's and Kimpel's actions stemmed from the City's inadequate training, which led to Dawes's death and Rosales's injuries.  Doc. 91 at 14-15.  As the allegations are specific and point to the inadequate training as the direct cause of the shooting, this element of Plaintiffs' failure-to-train claim is adequately pled.

### IV.    CONCLUSION

For the reasons stated, Plaintiffs have alleged sufficient facts to state a failure-to-train claim against the City.  Accordingly, Defendant City of Dallas's *Motion pursuant to Rule*

*12(b)(6) to Dismiss the Plaintiffs' Federal Claim alleged against it in the Plaintiffs' Third*

*Amended Complaint, and Brief in Support*, Doc. 95, should be **DENIED**.

      **SO RECOMMENDED** on March 12, 2021.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF
RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(B). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).