UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| MARY DAWES, *individually and as the Administrator of the Estate of Decedent Genevive A. Dawes*; ALFREDO SAUCEDO; and VIRGILIO ROSALES, | § § § § § § | |
| *Plaintiffs*, | § § | Civil Action No. 3:17-cv-1424-X |
| v. | § § | |
| CITY OF DALLAS, CHRISTOPHER HESS, and JASON KIMPEL, | § § § § | |
| *Defendants*. | § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is the City of Dallas's (Dallas) motion for summary judgment. The Fifth Circuit remanded this case, not reaching this Court's alternative holding, for further consideration of the claims against Dallas.  The Fifth Circuit expressly stated that this Court "may reiterate its no rights-violation finding, may reconsider that finding, or may consider any other aspect of the plaintiffs' claims against the City of Dallas."[1]  This Court, having reviewed the evidence again, maintains its prior finding that there was no constitutional violation by the officers.  And because there is no liability from the officers, Dawes cannot prove liability as to the City.  As a

---

[1] *Dawes v. City of Dallas*, No. 22-10876, 2024 WL 2268529, at *4 (5th Cir. May 20, 2024), *cert. denied sub nom. Dawes v. City of Dallas, Texas*, 221 L. Ed. 2d 965 (May 19, 2025).

result, the Court **GRANTS** the City's motion for summary judgment.  A final judgment will follow.

## I. Factual Background[2]

In the early morning hours of January 18, 2017, a Dallas police officer opened fire on Genevieve Davis.  Six Dallas police officers were dispatched to investigate suspicious vehicle and the officers learned that the car had been reported stolen. Dawes was sleeping in her car when police arrived and surrounded her vehicle.  In the shuffle, officers positioned behind the vehicle moved away from that position, moving back closer to a squad car.  Dawes then reversed her vehicle, hit a squad car, drove forward into a fence, and reversed again.  The officers who opened fire did not see that the other officers had moved away from behind Dawes's vehicle, believed them to be in mortal danger, and opened fire.  Dawes passed away from her wounds.

This Court entered summary judgment for Dallas and the individual officers involved in this suit—asserting qualified immunity.  Then, on appeal, the Fifth Circuit affirmed this Court's holding that the police officers are entitled to qualified immunity.[3]  Nevertheless, the Fifth Circuit remanded the claim against the City of Dallas for further consideration.[4]  On remand, this Court requested supplemental briefing as to *Monell* liability and the parties dutifully supplied that briefing.[5]

---

[2] A more fulsome recitation of the facts can be found in the Court's prior order at Doc. 142 at 1–10.

[3] *Dawes*, 2024 WL 2268529, at *4.

[4] *Id.*

[5] Doc. 166.

## II.  Legal Standard

The "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."[6]  This kind of liability follows from 42 U.S.C. § 1983 and *Monell v. Department of Social Services*.[7]  To succeed under *Monell*, "a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'"[8]

## III.  Legal Analysis

In this case, both sides agreed that finding that the individual officers did not violate the Constitution compels a finding that Dallas is entitled to summary judgment on the *Monell* claim.  The Fifth Circuit's decision did not compel a finding that Dallas wins at summary judgment, because qualified immunity for the officers depends on two questions: (1) whether the officers violated a constitutional right and (2) if the right at issue was clearly established at the time of the purported violation.  And the Fifth Circuit decided to affirm this Court's prior ruling on the ground that the right was not clearly established at the time of the violation, but did not reach whether the officers did not violate a constitutional right.  As a result, the Fifth

---

[6] *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

[7] 436 U.S. 658 (1978).

[8] *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010).

Circuit remanded for reconsideration whether the officer violated a constitutional right.[9]

After reviewing the record again, the Court here reiterates its previous no-rights-violation finding. The officers did not violate Dawes's constitutional rights, and therefore, there can be no liability for Dallas.

The Court first reasserts its summation of the relevant legal standards from its prior decision.[10] "To prevail on an excessive force claim, a plaintiff must establish injury which resulted directly and only from a use of force that was clearly excessive and the excessiveness of which was clearly unreasonable."[11] "[T]he relevant Fourth Amendment questions are whether the force was 'excessive' and 'unreasonable' as 'judged from the perspective of a reasonable officer on the scene, rather than with the

---

[9] In a display of honorable candor to the Court, Dawes cites to a Fifth Circuit case seemingly on point, establishing that without a clearly established right, there can be no *Monell* liability. In *Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018), the Fifth Circuit held that "[b]ecause Bustillos did not demonstrate a clearly established right, it follows that her claims for deliberate indifference against the District also fail." And further reasoned that "a policymaker cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established." *Id.* (cleaned up and emphasis in original). Nevertheless, Dawes argues that that case does not control here because the complaint's allegations concerning municipal liability were vague and conclusory. But that contravenes the rule that the Fifth Circuit adhered to in making its decision, which makes it controlling precedent.

Therefore, independent to and separate from the other analysis in this opinion, the Court determines that because there is no clearly established right, it follows that Dawes's claims against Dallas must also fail. This is a common-sense approach. How could a city have a policy of violating the Constitution, if the parameters of a constitutional violation are not clearly established? To hold cities to that standard, especially in the unwritten policy context, makes little sense.

Finally, the Court pauses to note that the judicial system is better off for attorneys like Dawes's counsel, who steadfastly adhere to their duty of candor. The Court heartily thanks them for such candor, which, at times, may be uncomfortable, yet is entirely in line with their duties as officers of the Court.

[10] Doc. 142 at 24–25.

[11] *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (cleaned up).

20/20 vision of hindsight.'"[12] "That calculus 'must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'"[13]

"In evaluating whether the officer used 'excessive' force, courts consider the 'severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"[14]  The Fifth Circuit holds that "[a]n officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others."[15]  "A court must 'be cautious about second-guessing [the] police officer's assessment' of the threat level."[16]

The Court need not recount all of the events of that night, but the Court adopts its prior summation for these purposes on remand.[17]  The Court reviewed the evidence again and as before, the Court determines again that Officers Hess and Kimpel reasonably believed that Dawes posed a threat of serious harm to themselves and the other officers.  Because it is undisputed that both Officer Hess's and Officer

---

[12] *Harmon*, 16 F.4th at 1163 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

[13] *Id.* (quoting *Graham*, 490 U.S. at 396–97).

[14] *Id.* (quoting *Graham*, 490 U.S. at 396).

[15] *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

[16] *Harmon v. City of Arlington*, 16 F.4th 1156, 1163 (5th Cir. 2021) (quoting *Ryburn v. Huff*, 565 U.S. 469, 477 (2012)).

[17] That summation is available at Doc. 142 at 25–29.

Kimpel's on-scene assessment was that Dawes's vehicle posed a threat of serious harm to themselves and other officers,[18] the only remining question is whether their beliefs were objectively reasonable. They were.

The officers, in the middle of the night, witnessed Dawes's car reverse, then drive forward into a fence and then reverse again—where other officers were just moments prior.[19] It was not unreasonable for Officers Hess and Kimpel to believe another officer or other officers were still standing behind the vehicle as it reversed. Accordingly, there is no constitutional violation to form the basis for liability under *Monell*.

## IV. Conclusion

As a result, the Court once again **GRANTS** the City of Dallas's motion for summary judgment. A final judgment will follow.

**IT IS SO ORDERED** this 21st day of August, 2025.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[18] Doc. 142 at 30.

[19] Doc. 142 at 4–5.